**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 20-CR-703-1 |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | The Honorable John Robert Blakey |
| | ) | |
| **GLENN STEPUL,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**GLENN STEPUL'S FIRST MOTION FOR EXTENSION OF HIS SELF-SURRENDER DATE FROM JANUARY 5, 2026, TO MARCH 5, 2026**

Defendant Glenn Stepul, by and through his attorneys, respectfully moves this Honorable Court for an Order modestly extending his self-surrender date from January 5, 2026, to March 5, 2026.[1] In support of this Motion, Mr. Stepul states as follows:

1. **Indictment**. Mr. Stepul was indicted on October 1, 2020.

2. **Release on Bond**. On October 13, 2020, Mr. Stepul's conditions of release were set at a $4,500 personal recognizance bond.

---

[1] The Government on December 24, 2025, having received a draft version of this filing, informed counsel that it would oppose the instant motion because of the age of the case and because it believes Mr. Stepul in the past three months should be prepared for his surrender of service.

3. **Compliance with Release Conditions and Otherwise Crime-Free Life**. Mr. Stepul has not had a single issue with the law either before this case or during the pendency of this case. He has been entirely compliant with all conditions of his bond.

4. **Guilty Plea**. On September 22, 2023, the parties filed an agreed motion to set the case for a change of plea hearing. On September 4, 2024, following various agreed motions to reset the change of plea, Mr. Stepul pled guilty to one count of conspiracy to violate the Arms Export Control Act and the International Emergency Economic Powers Act, 18 U.S.C. § 371.

5. **Underlying Conduct**. The basis of the charges was that Mr. Stepul sent components and accessories to Ukraine (and no actual weapons or ammunition) to individuals in the Ukraine to defend their families against an impending Russian military threat. There were no claims that Mr. Stepul in any way financially benefitted from his conduct. Rather, he sent over these materials because of what he perceived as his patriotic duty. Put another way, and as the evidence and the numerous letters submitted at sentencing on Mr. Stepul's behalf established, Mr. Stepul was and is a proud Ukrainian who devoted his time and resources to protecting friends, family, and Ukrainian citizens from Russian aggression. That said, he also admitted that he failed to first obtain the requisite licenses from the United States State Department to send these items.

6. **Sentencing and Self-Surrender Date**. After various agreed motions to reset sentencing, on September 23, 2025, this Court sentenced Mr. Stepul to 24 months imprisonment. This Court set a surrender date of January 5, 2026.

7. **First Request**. This is Mr. Stepul's first request to adjourn that sentencing date.

8. **Relevant Personal and Business Background**. At the time of his Indictment, Mr. Stepul had a business in Ukraine manufacturing children's playground equipment. This playground equipment was exported to the United States.

   a. Since that time and owing to Russian aggressions in Ukraine that started in 2022, Mr. Stepul lost that business. More specifically, some of the operations were destroyed by Russian artillery. In other cases, Mr. Stepul made the decision to shut down other factories when he assessed that continued operations were not safe for his workers.

   b. Acutely aware of his financial responsibilities to family members in Ukraine and in the United States, Mr. Stepul establishes a new businesses in Miami, Florida. He started Ruby Star Garage in March 2023 and Ruby Star Auto Body Shop in February 2025.

   c. Ruby Star Garage has 9 full-time employees. Ruby Star Body Shop has 7 full time employees.

   d. All 16 employees and their families depend on their employment and Mr. Stepul's day-to-day management of the businesses for their livelihood.

   e. Since his September 23, 2025 sentencing date (and after receiving his January 5, 2026 report date), Mr. Stepul has attempted to either sell his garage and body shop businesses or find a suitable general manager capable of running the day-to-day operations in his absence.

   f. Despite diligent efforts from October to the present (roughly 11 weeks), Mr. Stepul, hindered in part because of the holidays and difficulty of closing a deal at the end of the calendar year, has unfortunately been unable either to sell the

2

businesses or to locate a suitable general manager for the businesses. None of the existing employees or the garage or body shop can either purchase the businesses or manage the day-to-day operations of the businesses.

g. This means that if Mr. Stepul were required to report to prison on January 5, 2025, all 16 of his employees would immediately be without employment and the families that depend upon them would be without income.

h. In addition, Mr. Stepul has a rental property at 2306 Van Buren Street in Hollywood, Florida. He houses 11 tenants on the property who are on welfare or disability and have no other place to live.

i. Mr. Stepul charges well below market rent to these 11 tenants and funds the management of the rental property with his garage and body shop businesses.

j. Without Mr. Stepul's generous contribution to the management of his rental property, it will no longer be possible to pay real estate taxes, insurance, and maintenance on the property and the 11 disabled and/or low-income tenants will not have a place to live.

k. In addition to the consequences to Mr. Stepul's 16 employee and 11 low-income tenants if he had to report to prison on January 5, 2026 without a suitable alternative to keeping his businesses operating, individuals in Ukraine to whom Mr. Stepul provides monthly support, would also suffer. Chief among these individuals is Victor Martsykh, Mr. Stepul's 79-year-old grandfather who is in the midst of undergoing critical heart operations in Ukraine.

l. Mr. Martsykh receives his medical care in private hospitals which are funded by Mr. Stepul. If Mr. Martsykh were unable to receive funding for his medical care

3

      from Mr. Stepul, he would be forced to seek care at a public hospital. Given the drain on resources at public hospitals in Ukraine which must also cater to wounded soldiers, it is likely that Mr. Martsykh would not receive the heart operations he needs in time and might not survive his current medical crisis.

9. **Mr. Stepul's Request for a Modest 8-Week Extension of his Self-Surrender Date**. Mr. Stepul is not asking for indefinite postponement of his surrender date.[2] Instead, he believes that if he were to receive eight more weeks before his scheduled surrender date, he would be able to take advantage of the beginning of a new year to either sell his garage and body shop businesses or secure a suitable general manager who was qualified and willing to manage the businesses in his absence.[3] This would avoid serious adverse consequences for Mr. Stepul's employees, his tenants, grandfather, and others in the United States and the Ukraine who depend upon Mr. Stepul's generosity for their day-to-day existence.

## CONCLUSION

For these reasons, we respectfully ask this Honorable Court to Order that Mr. Stepul's report date be adjourned from January 5, 2026, to March 5, 2026.

---

[2] For reasons that are inappropriate to detail in a public filing, Mr. Stepul did not approach the Court earlier for the requested extension.

[3] As noted, it understood that Q4 slows business momentum (tax filings, audits, financial close-outs, etc.). Buyers prefer to begin new acquisition initiatives in January or early Q1 when budgets are fresh and strategic planning cycles restart. That way, Q1 tax liability is not forced into the current year, buyers have the benefit of relying on complete historical year data, and potential Q1 buyers of a business like Mr. Stepul's can see full fiscal year data and assess fresh performance trends. These are some of the economic reasons explaining why selling (or transferring control over) his business in October-December has been challenging and why he believes the hurdles are significantly lower in Q1.

Respectfully submitted,

By: /s/ Carolyn P. Gurland

Carolyn Pelling Gurland
T. Markus Funk
WHITE & CASE, LLP
111 South Wacker
Suite 5100
Chicago, IL 60606

*Attorney for Defendant Glenn Stepul*

5

**CERTIFICATE OF SERVICE**

I, Carolyn Pelling Gurland, attorney for Defendant, Glenn Stepul, hereby certify that on this, the 25th day of December 2025, I caused the above-described document to be filed on the CM/ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

/s/ Carolyn P. Gurland

CAROLYN PELLING GURLAND
WHITE & CASE
227 West Monroe Street
Suite 3900
Chicago, IL 60606-5055
(312) 420-9263
Carolyn.gurland@whitecase.com